# DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO v ROGERS d/b/a CIRCUIT BAR

Case No. 85-0965

State of Florida, Division of Administrative Hearings

December 19, 1985

## APPEARANCES OF COUNSEL

**Louisa E. Hargrett** for petitioner.

**Ronald H. Schnell** for respondent.

267

## OPINION

J. LAWRENCE JOHNSTON, Hearing Officer.

A final hearing was held in this case in Tampa, on September 9, 1985. The issue is whether the charges against Respondent, Everett R. Rogers d/b/a Circus Bar (Respondent) contained in the Amended Notice To Show Cause[1] filed by Petitioner, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (Division), are true. The Division has charged multiple violations of Florida's drug laws on the licensed premises by employees of Respondent for which Respondent allegedly is responsible for gambling violations and illegal USDA food stamp coupon transactions on the licensed premises by Respondent's employees. As a result of the alleged drug violations and other violations, the Amended Notice To Show Cause also alleges that Respondent maintained the licensed premises which were visited by persons for purposes of unlawfully using substances controlled under Chapter 893, Florida Statutes, or which were used for the illegal keeping, selling or delivering of such substances, thereby constituting the maintenance of a public nuisance in violation of Sections 823.10 and 561.29(c), Florida Statutes (1983). Finally, also as a result of the alleged drug violations and other violations on the licensed premises, it is alleged that Respondent kept or maintained the licensed premises which were resorted to by persons using substances controlled by Chapter 893, Florida Statutes, for the purpose of using those substances or which were used for the keeping of such substances contrary to Section 893.13(2)(a)(5) and 561.29(1)(a), Florida Statutes (1983). Respondent denies all of the charges.

### FINDINGS OF FACT

1. Respondent, Everett R. Rogers d/b/a Circus Bar (Respondent), has been licensed by Petitioner, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (Division), to sell alcoholic beverages under License No. 39-602, Series 2-COP, for licensed premises located at 1118 West Kennedy Boulevard, Tampa, Florida, at all times pertinent to this case. Respondent's most recent license expired by its terms on September 30, 1985.

2. Respondent voluntarily closed the business operated under his license on or about February 2, 1985. On or about February 2, 1985, Respondent initiated personal bankruptcy proceedings which encompassed the business which he was operating at the licensed premises.

---

[1] The Division referred to the Division of Administrative Hearings its Amended Notice To Show Cause. The original Notice To Show Cause (assuming there was one) never was filed.

The licensed premises and Respondent's license have been turned over to Respondent's trustee in bankruptcy.

3. On February 2, 1984, three marijuana cigarettes were possessed, sold and delivered at the licensed premises with the knowledge of Respondent's bartender, Bobby Warner.[2]

4. On February 3, 1984, the licensed premises were visited by a person named Melvin Stusse and undercover police officer Paul Miller for the purpose of the sale of cocaine, although no sale took place.

5. On February 3, 1984, three grams of marijuana were possessed, sold and delivered at the licensed premises.

6. On February 3, 1984, undercover police officer Thomas Kinsella possessed marijuana on the licensed premises with the knowledge of bartender Warner. Kinsella asked Warner for something in which to place a baggie of marijuana, and Warner took Kinsella to the stockroom to give him a paper clip box for that purpose.

7. On February 6, 1984, bartender Warner and patrons of the licensed premises gambled on the pool table in the licensed premises.

8. On February 8, 1984, the sale of eight marijuana cigarettes was negotiated at the bar in the licensed premises but the delivery took place outside the premises and there was no evidence that the marijuana was possessed in the licensed premises.

9. On February 9, 1984, three marijuana cigarettes were sold, delivered and possessed at the licensed premises with the knowledge of Respondent's manager, Joan Sammons.

10. On February 13, 1984, the sale of approximately two and one-half grams of marijuana was negotiated at the licensed premises with the knowledge of bartender Warner. The marijuana was delivered outside the licensed premises, and there was no evidence that marijuana was possessed on the licensed premises.

---

[2] This drug transaction was not specifically alleged in the Amended Notice To Show Cause. However, the evidence was admitted over Respondent's objection because it is relevant to paragraphs 9 and 10 of the Amended Notice To Show Cause which alleged that between approximately February 2, 1984 and March 30, 1984, Respondent unlawfully maintained a public nuisance in violation of Sections 823.10 and 561.29(1)(c), Florida Statutes (1983), and maintained a place resorted to by persons for the purpose of using substances controlled under Chapter 893, Florida Statutes, or which is used for keeping controlled substances contrary to Sections 893.13(2)(a)(5) and 561.29(1)(a), Florida Statutes (1983). This Finding of Fact, like others finding drug violations not explicitly alleged in the Amended Notice To Show Cause are included because of their relevance to paragraphs 9 and 10 of the Amended Notice To Show Cause.

11. On February 24, 1984, six marijuana cigarettes were sold, possessed and delivered on the licensed premises with the knowledge of manager Sammons.

12. On February 28, 1984, approximately two and one-half grams of marijuana were sold, possessed and delivered on the licensed premises with the knowledge of bartender Warner.

13. On March 5, 1984, bartender Warner possessed, sold and delivered five marijuana cigarettes on the licensed premises.

14. On March 6, 1984, manager Sammons sold, possessed and delivered approximately two grams of marijuana on the licensed premises.

15. On March 7, 1984, manager Sammons purchased $50.00 worth of USDA food stamp coupons for $25.00 on the licensed premises.

16. On March 19, 1984, manager Sammons purchased $150.00 worth of USDA food stamp coupons for $75.00 on the licensed premises.

17. Also, on March 19, 1984, four marijuana cigarettes were possessed, sold and delivered on the licensed premises with the knowledge of manager Sammons.

18. On March 21, 1984, approximately 1.2 grams of marijuana were possessed, sold and delivered on the licensed premises. It was not proved that any of Respondent's employees were aware of this transaction.

19. On March 30, 1984, Respondent's bartender, Steve Keller, possessed, sold and delivered approximately three and one-half grams of marijuana on the licensed premises. Manager Sammons also knew about this transaction.

20. Respondent had a policy against illegal drug activity and gambling on the licensed premises. He enforced the policy when he was on the licensed premises. Respondent posted signs prohibiting gambling and told employees that they should evict patrons suspected of illegal drug activities or gambling. But Respondent did little or nothing to ensure that his policies were followed evenings and weekends when he was not present at the licensed premises. Respondent performed no background checks on his employees and continued to employ Sammons as his manager although he knew she had been arrested. Respondent had no written employment application or written instructions for his employees. Respondent did not polygraph his employees.

## CONCLUSIONS OF LAW

1. Section 561.29, Florida Statutes (1983), contains the following relevant provisions:

(1) The division is given full power and authority to revoke or suspend the license of any person holding a license under the Beverage Law, when it is determined or found by the division upon sufficient cause appearing of:

(a) Violation by the licensee or his or its agents, officers, servants, or employees, on the licensed premises, or elsewhere while in the scope of employment, of any of the laws of this state or of the United States, or violation of any municipal or county regulation in regard to the hours of sale, service, or consumption of alcoholic beverages, or engaging in or permitting disorderly conduct in the licensed premises, or permitting another on the licensed premises to violate any of the laws of this state or of the United States. . .

(b) Violation by the licensee . . . of any laws of this state or any state or territory of the United States

(c) Maintaining a nuisance on the licensed premises.

.   .   .   .   .   .   .   .   .   .   .

(3) The division may impose a civil penalty against licensee for any violation mentioned in the Beverage Law, or any rule issued pursuant thereto, not to exceed $1,000 for violations arising out of single transaction. If the licensee fails to pay the civil penalty, his license shall be suspended for such period of time as the division may specify.

2. Section 561.15(3), Florida Statutes (1983), authorizes the Division to proceed with disciplinary proceedings against a licensee even if the license has been "abandoned after written notice that revocation or suspension proceedings had been or would be brought against the license." In this case, Respondent, Everett R. Rogers d/b/a Circus Bar (Respondent), ceased operating the licensed business but did not "abandon" the license. To the contrary, Respondent turned the license and the business over to his trustee in personal bankruptcy. Therefore, Petitioner, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (Division), did not lose jurisdiction to proceed with this case when Respondent ceased to operate the licensed business.

3. On September 30, 1986, Respondent's most current licensed expired. Cf. Section 561.26, Florida Statutes (1983). However, Section 561.27(2), Florida Statutes (1983) provides:

A license may be renewed subsequent to expiration each year only upon making to the division a delinquent application for approval, accompanied by an affidavit stating that no sales or purchases of

**271**

alcoholic beverages have been made subsequent to the expiration of the license, and upon payment of a penalty of $5 for each month or fraction of a month of delinquency, or upon payment of a penalty of 5 percent of the license fee, whichever amount is the greater. Any license not renewed within 60 days of expiration will be cancelled by the division unless such license is involved in litigation; however, the division may allow a licensee to renew the license subsequent to the 60-day period after good and sufficient cause for the delinquency has been shown to the division by the licensee.

Since Respondent still might be able to renew his license under the quoted statute, the Division has jurisdiction to proceed with this case. Cf. *Boedy v. Department of Professional Regulation*, 433 So. 2d 544 (Fla. 1st DCA 1983).

4. Section 823.10, Florida Statutes (1983), declares a place or building where controlled substances are illegally kept, sold, or used, to be a nuisance.

5. Section 893.13(2)(a)(5), Florida Statutes (1983), makes it unlawful for any person:

To keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter.

6. Marijuana is a controlled substance. It is a violation of state law to sell, use, deliver, or possess marijuana. Section 893.13, Florida Statutes (1983).

7. Respondent's employees Warner, Sammons and Keller violated Sections 893.13, Florida Statutes (1983). There was no proof that they were entrapped. Their participation in the illegal drug transactions was voluntary.

8. Warner, Sammons and Keller violated Florida drug laws while they were in the scope of their employment. Neither the fact that Respondent was not in the business of dealing in illegal drugs nor the fact that Warner, Sammons and Keller were told not to violate the drug laws takes them out of the scope of their employment for purposes of Section 561.29(1)(a), Florida Statutes (1983).

9. Respondent is held accountable for the violations of Warner, Sammons and Keller if he was culpably responsible by reason of his own negligence, intentional wrong doing or lack of diligence. *Pauline v. Lee*, 147 So.2d 359 (Fla. 2d DCA 1962). In *Pauline v. Lee*, the court held:

The persistent and practiced manner with which the solicitations [for

272

prostitution] described by the state's witnesses were made is sufficient to permit a factual inference leading to the conclusion that such violations of law were either fostered, condoned or negligently overlooked by the licensee notwithstanding his absence from the premises on the date in question.

*Id.* at 364. See also *Taylor v. State Beverage Department*, 194 So.2d 321, 325 (Fla. 2d DCA 1967). The evidence in *Pauline v. Lee* consisted of five separate solicitations for prostitution by five different employees of the licensee.

10. In *Lash, Inc. v. State Department of Business Regulation*, 411 So.2d 276 (Fla. 3d DCA 1983), the operative facts before the court were:

The license revocation stemmed from narcotics violations on appellant's premises. The evidence established that on five occasions over a period of a week, undercover beverage agents purchased controlled substances from two of appellant's employees.

11. At page 278 of its decision, the court in *Lash* applied the standard for revocation or suspension of a beverage license to the facts of that case:

Under Section 561.29(1), where the unlawful activity is committed by the Licensee's agent, simple negligence is sufficient for revocation. Admittedly, the courts have refused to uphold revocations when the evidence showed only that on one occasion the licensee's employees violated the laws, and that the licensee otherwise took measures to comply with them. (Citations omitted.) Where, however, the laws are repeatedly and flagrantly violated by the employees, an inference arises leading to the conclusion that such violations are either fostered, condoned or negligently overlooked by the licensee, notwithstanding his absence from the premises when the violations occur. (Citations omitted.) Consequently, if the evidence supports the conclusion that the licensee failed to exercise ordinary care in the maintenance of the licensed premises or the supervision of his employees, he can be found negligent and his license revoked. (Citation omitted.)

Where the violations are, as here, committed in a persistent and recurring manner, consisting of more than one isolated incident, the courts have not hesitated to find that such violations were either fostered, condoned, or negligently overlooked by the licensee, even though he may have been absent at the time of the commission of

273

such. (Citations omitted.) In the present case, the recurring sales were made possible by appellant's failure to supervise the premises and his employees in a reasonably diligent manner, properly leading to the license revocation.

The Court in *Lash* permitted the Division to draw an inference that the licensee negligently overlooked the violations or failed to exercise ordinary care in the maintenance of the licensed premises or supervision of his employees based upon the operative facts in *Lash*.

12. In this case, there was evidence of more violations by more employees over a longer period of time than in the *Lash* case. Accordingly, the evidence in this case establishes a prima facie case. In this case, the evidence is sufficient to support an inference of the type drawn in *Lash*. Respondent negligently overlooked the several drug violations that took place on the licensed premises and failed to supervise the premises and his employees in a reasonably diligent manner under the circumstances.

13. For the reasons set forth above, Respondent also is culpably responsible for maintaining a nuisance in violation of Sections 823.10 and 561.29(1)(c), Florida Statutes (1983), and for keeping a place which is resorted to by persons using controlled substances in violation of Chapter 893 for the purpose of using those substances or which is used for keeping or selling them in violation of Chapter 893, thereby violating Sections 893.13(2)(a)(5) and 561.29(1)(a), Florida Statutes (1983).

14. The evidence also proved that Respondent's employee Warner violated Section 849.01, Florida Statutes (1983), by participating in or permitting wagering on a game of pool on the licensed premises on February 6, 1984 and February 28, 1984. Again, because of Respondent's lack of diligence in supervising the licensed premises, Respondent is culpably responsible for those violations under Section 561.29(1)(a), Florida Statutes (1983).

15. Respondent's manager Sammons violated Title VII, United States Code, Section 2024(b), by buying USDA food stamp coupons for less than face value on March 7 and March 19, 1984. Respondent also is culpably responsible for those violations under Section 561.29(1)(a), Florida Statutes (1983).

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law,

it is recommended that Petitioner, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco, enter a final order revoking alcoholic beverage license number 39-602, Series 2-COP, held by Respondent, Everett R. Rogers d/b/a Circus Bar, 1118 W. Kennedy Blvd., Tampa, Florida.

RECOMMENDED this 19th day of December, 1985, in Tallahassee, Florida.

## FINAL ORDER

COMES NOW, the Director of the Division of Alcoholic Beverages and Tobacco and hereby enters this the Final Order of the Division in the above captioned matter, pursuant to authority vested by the Beverage Law and Chapter 120, Florida Statutes, as follows:

## FINDINGS OF FACT

The Division accepts the Findings of Fact as set forth in the Hearing Officer's Recommended Order of December 19, 1985, with the exception of paragraph 10, which is specifically rejected as not supported by competent substantial evidence in the record, and paragraph 3, which is corrected to read that the sale took place immediately outside the front door of the premises.

## CONCLUSIONS OF LAW

The Division accepts the Conclusions of Law as set forth in the Hearing Officer's Recommended Order of December 19, 1985, with the following addition to paragraph 3:

In addition, should the license not be renewed, it will not be cancelled due to the pending litigation.

## ORDER

The Division accepts the recommendation of revocation as set forth in the Hearing Officer's Recommended Order of December 19, 1985.

DONE AND ORDERED this 27th day of February, 1986, at Tallahassee, Florida.

/s/Howard M. Rasmussen,
Director
Division of Alcoholic Beverages
and Tobacco